JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ENVIRONMENT CALIFORNIA, INC., <br><br> Plaintiff, <br> v. <br><br> CITY OF LOS ANGELES; LOS ANGELES HARBOR DEPARTMENT, a.k.a THE PORT OF LOS ANGELES and LOS ANGELES BOARD OF HARBOR COMMISSIONERS, <br><br> Defendants. | CASE NO.  2:24-cv-06154-CBM-KS <br><br> **CONSENT DECREE AND ORDER** |

Upon consideration of the Stipulation for Entry of Consent Decree and Order filed by the Parties, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

**I.   BACKGROUND**

1. The Harbor Department of the City of Los Angeles ("Defendant" also commonly known as the "Port of Los Angeles") holds the tidelands and submerged lands within City limits in trust for the people of the State of California.  1911 Cal. Stats. 656; Cal. Pub. Res. Code § 6301; *People v. California Fish Co.*, 166 Cal. 576, 584 (1913).  The Harbor Department is charged with developing and using its

//

property to promote and accommodate maritime commerce, navigation and fishing. Los Angeles City Charter §§ 601, 651.

2. In about 1996, Defendant completed a grade separation project to streamline rail and truck traffic to its facilities on Terminal Island. The project lowered Pier S Avenue in the City/Port of Long Beach to pass under the rail line. Because of shallow groundwater on Terminal Island, the New Dock Street Pump Station ("Pump Station") was constructed to prevent flooding of the underpass. The Pump Station depresses groundwater in the immediate area of the underpass but also collects storm water from drains in the surrounding area. The Pump Station discharges into the Cerritos Channel of the Los Angeles Harbor pursuant to a facility-specific National Pollutant Discharge Elimination System ("NPDES") Permit issued by the Los Angeles Regional Water Quality Control Board. The operative Permit is numbered CA0064157 and was issued in 2019 as Water Quality Order Number R4-2019-0054.

3. On May 21, 2024, Environment California, Inc. ("Plaintiff") issued a 60-Day Notice letter to Defendant alleging violation of the NPDES Permit's numeric effluent limits beginning May 2019, violation of the NPDES Permit's prohibition on bypass and violation of the NPDES Permit's requirement that bypasses be reported ("Notice Letter").

4. On July 23, 2024, Plaintiff filed a Complaint in this action against the City of Los Angeles, also named as Los Angeles Harbor Department and Los Angeles Board of Harbor Commissioners, under the federal Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA"), for alleged violations of the CWA at Defendant's Pump Station (hereinafter the "Action").

5. On September 26, 2024, Plaintiff issued a supplemental 60-day Notice letter alleging violation of the NPDES Permit's monitoring (sampling) requirements ("Supplemental Notice Letter").

//

6. The Parties attest and the Court, by entering this Consent Decree and Order (the "Consent Decree"), finds that this Consent Decree has been negotiated by all Parties in good faith; settlement will avoid continued litigation between the Parties; settlement of this Action is in the public interest in accordance with the CWA; and entry of this Consent Decree is fair and reasonable.

7. On the date this Consent Decree is filed with the Court, Plaintiff shall concurrently serve a copy of this Consent Decree on the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region 9, and the United States Department of Justice (collectively, the "Federal Agencies"), for agency review consistent with the requirements of 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5. The Federal Agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Federal Agency Review Period"). In the event that any of the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised. If the Parties are unable to agree on how to respond to the issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s). Plaintiff shall notify the Court of the date the Consent Decree is received by the agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period. Promptly following expiration of the review period, Plaintiff shall request that the Court enter the Consent Decree.

## II. JURISDICTION AND VENUE AND CHOICE OF LAW

8. This Court has jurisdiction over the Parties and subject matter of this Action and Consent Decree pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365. Venue is proper in this Court pursuant to 33 U.S.C. § 1365(c) and 28 U.S.C. §§ 1391(b) and (c) because the Pump Station is located within this District. This

Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

### III.  APPLICABILITY

9. The provisions of this Consent Decree shall apply to and be binding upon the Parties and their respective officers, employees, successors, and assigns.

10. The duties and obligations under this Consent Decree shall not be modified, diminished, terminated, or otherwise altered by the transfer of any legal or equitable interest in the Pump Station.

11. If, during the pendency of this Consent Decree, Defendant transfers ownership or operation of the Pump Station to another entity, Defendant shall serve a copy of this Consent Decree upon the successor owner or operator at least 30 days prior to the contemplated transfer and shall contemporaneously inform Plaintiff of such transfer.  Defendant shall condition any transfer upon an agreement by the transferee to be subject to this Consent Decree.  The Parties shall petition the Court to modify the Consent Decree to substitute the successor operator for Defendant as a party hereto, as agreed to by Plaintiff and the owners of the Pump Station.

12. Definitions.  For the purposes of this Consent Decree, the following terms shall have the following meanings:

   a. "<u>Bacteria Effluent Violation</u>" - any exceedance of the Permit's effluent limitations on enterococci, fecal coliform, or total coliform.  These limitations are derived from the Los Angeles Harbor Bacteria Total Maximum Daily Load and measured in Most Probable Number (MPN)/100mL.  For enterococci, the single sample limit is 104 MPN/100mL and the geometric mean limit is 35 MPN/100mL; for fecal coliform, the single sample limit is 400 MPN/100mL and the geometric mean limit is 200 MPN/100mL; and for total coliform, the single sample limit is 10,000 MPN/100mL and the geometric mean limit is 1,000 MPN/100mL.

//

b. "Days" - calendar days, including weekends and holidays. Computation of time begins the day after receipt by one representative.

c. "Groundwater Discharge" - any discharge of groundwater from the Pump Station, Discharge Point 001, or any other stormwater outfall that receives stormwater from the area currently served by the Pump Station.

d. "The Permit" or "NPDES Permit" means: (1) NPDES Permit No. CA0064157, issued by the California Regional Water Quality Control Board, Los Angeles Region ("Regional Board") on May 16, 2019, to the Port of Los Angeles, with an effective date of July 1, 2019, pursuant to the NPDES permitting program of the CWA, 33 U.S.C. § 1342, and including any and all subsequent amendments, modifications, renewals or reissuances thereof; and (2) any Municipal Separate Storm Sewer System (MS4) permit that the Defendant is subject to that supersedes NPDES Permit No. CA0064157.

e. "Pump Station" - the current facility at the Port of Los Angeles where stormwater and groundwater are conveyed prior to discharge into the Cerritos Channel. If alterations to Defendant's facilities and operations result in the alteration or removal of the Pump Station, then the requirements in this Consent Decree that apply to the Pump Station shall apply to any alternative methods of conveyance and discharge used in replacement of the Pump Station.

## IV. COMPLIANCE AND PERFORMANCE OBLIGATIONS

13. Defendant shall review the current design and operation of the Facility and shall, using the Harbor Revenue Fund only, and using forces and funds under its exclusive control pursuant to the Los Angeles City Charter, design, implement, and monitor the effectiveness of measures to eliminate Groundwater Discharges and Bacteria Effluent Violations.

### GROUNDWATER DIVERSION

14. Not later than 6 months after the effective date of this Consent Decree, Defendant shall provide Plaintiff with a full and complete plan and schedule with

5

interim and final deadlines to eliminate contaminated Groundwater Discharges from the Pump Station ("Groundwater Diversion Plan") and to improve and isolate the storm water collection and discharge system currently associated with the Pump Station ("Storm Drain Replacement and Improvement Plan"). Except under the circumstances set forth in Paragraph 17, the Storm Drain Replacement and Improvement Plan shall include plans to: (i) line existing storm water collection and discharge pipes to prevent exfiltration of groundwater; and (ii) replace the above ground portion of the 42-inch force discharge line. Except under the circumstances set forth in Paragraph 17, the Groundwater Diversion Plan shall include plans to (i) modify the groundwater collection vaults and install new groundwater pumps; and (ii) install discharge piping to divert groundwater to the Terminal Island Water Reclamation Plant for treatment. Both Plans shall identify specific milestones and include proposed interim deadlines for each phase.

15. Plaintiff shall have 45 days to review the Storm Drain Replacement and Improvement Plan and Groundwater Diversion Plan and request any additional information. Before the end of the 45-day review period, Plaintiff shall submit comments to Defendant. Defendant shall confer with Plaintiff in good faith as to the appropriate scale and components of the Plans to ensure that all groundwater is successfully isolated from stormwater pipes.

16. <u>Project Compliance Deadline.</u> Not later than 30 months after the effective date of this Consent Decree (unless such deadline is extended by mutual written consent of the Parties; the notice of which will be given to the court within a reasonable time thereafter), Defendant shall complete and fully implement all elements of the Storm Drain Replacement and Improvement Plan and Groundwater Diversion Plan and eliminate Groundwater Discharges. Until its completion, Defendant shall provide Plaintiff with semi-annual written updates regarding the progress in implementing the Plans.

//

17. If Defendant determines that it is infeasible to divert groundwater to the Terminal Island Water Reclamation Plant, or to fully implement the Storm Drain Replacement and Improvement Plan or the Groundwater Diversion Plan, it shall notify Plaintiff within 30 days of such determination and shall provide Plaintiff with a written report describing the reason(s) for infeasibility and proposing one or more alternative projects for the Storm Drain Replacement and Improvement Plan or the Groundwater Diversion Plan. Within 30 days of the transmittal of this written report, Plaintiff and Defendant shall meet and confer to discuss alternative projects capable of eliminating Groundwater Discharges. The Project Compliance Deadline and associated stipulated penalties shall remain in effect unless Plaintiff agrees that a tolling agreement is appropriate, based on Defendant's written report and subsequent discussions.

## ELIMINATION OF BACTERIA EFFLUENT VIOLATIONS IN STORMWATER DISCHARGES

18. <u>Bacteria Limit Compliance Deadline</u>. Not later than the Project Compliance Deadline, Defendant shall eliminate Bacteria Effluent Violations. Defendant shall provide Plaintiff with semi-annual written updates regarding the progress in eliminating Bacteria Effluent Violations. If Defendant has not eliminated Bacteria Effluent Violations within 1 year after completing the Groundwater Diversion Plan, Defendant shall meet and confer with Plaintiff to discuss possible alternative solutions to eliminate Bacteria Effluent Violations. Alternative solutions to be discussed at such time shall include the installation of a UV treatment system of sufficient capacity to eliminate Bacteria Effluent Violations during storm events, and Defendant shall confer with Plaintiff in good faith as to the appropriate scale and components of such a UV treatment system.

## MONITORING REQUIREMENTS

19. For the duration of this Consent Decree, Defendant shall collect samples in accordance with the table attached as Appendix A. At minimum,

Defendant shall analyze each of these samples for the pollutants at issue in the Complaint: enterococci, fecal coliform, total coliform, copper, and petroleum hydrocarbons. The results of this monitoring shall be included in Defendant's quarterly reports to the Regional Board and shall be concurrently transmitted to Plaintiff.

20. Defendant shall install an automated sampling system on the 6" discharge line to facilitate the timely collection of samples. Defendant shall maintain a reliable measure of the run time of each of the pumps at the Pump Station as a proxy for the volume of the Pump Station's discharges.

## STIPULATED PAYMENTS

21. Upon completion of the Groundwater Diversion Project, if the automated sampling system indicates that the Pump Station discharges water 7 or more days following the conclusion of the last measurable storm event, this discharge shall be presumed, subject to contrary proof, to be a Groundwater Discharge, and Defendant shall incur a stipulated penalty for each day on which a Groundwater Discharge occurred. Defendant shall accrue stipulated penalties for Groundwater Discharges pursuant to this paragraph until Defendant achieves 12 consecutive months with no Groundwater Discharges.

22. Stipulated penalties for each Groundwater Discharge shall be determined on a daily basis, to be incurred in the following amounts: during the first 6 months, the amount of each daily penalty shall be $1,000; during the second 6 months, the amount of each daily penalty shall be $5,000; and beginning 1 year following completion of the Groundwater Diversion Project, the amount of each daily penalty shall be $10,000.

23. Upon completion of the Groundwater Diversion Project, if Defendant's sampling and monitoring of the Pump Station's discharges reveals a Bacteria Effluent Violation, Defendant shall incur, separately for each bacteria limit, a stipulated penalty for each day on which a Bacteria Effluent Violation occurred.

Separately for each bacteria limit, Defendant shall incur stipulated penalties for Bacteria Effluent Violations until 12 consecutive months of compliance with that limit is achieved.

24. Stipulated penalties for each Bacteria Effluent Violation shall be determined on a daily basis, to be incurred in the following amounts: during the first 6 months, the amount of each daily penalty shall be $1,000; during the second 6 months, the amount of each daily penalty shall be $5,000; and beginning 1 year following the Bacteria Limit Compliance Deadline, the amount of each daily penalty shall be $10,000.

25. Stipulated penalties shall accrue, per day, for each failure by Defendant to complete any of its obligations under Paragraphs 13–20 by their applicable deadlines, except stipulated penalties for failure to meet the Project Compliance Deadline or Bacteria Limit Compliance Deadline shall each begin at $2,500 per day:

| DURATION OF VIOLATION | PENALTY AMOUNT PER DAY |
|---|---|
| 1-30 days | $250 |
| 31-60 days | $1,000 |
| Over 60 days | $2,500 |

26. Stipulated penalties shall accrue automatically and without notice. Stipulated penalties shall be payable within 60 days of Defendant's knowledge of a Groundwater Discharge, within 60 days of Defendant's receipt of a monitoring report identifying a Bacteria Effluent Violation, and within 60 days of Defendant's completion of an obligation at a date later than the applicable deadline, pursuant to Paragraph 25. Each stipulated penalty shall be paid to the Rose Foundation as set forth in Paragraph 29.

//

27. Payment of stipulated penalties does not preclude Plaintiff from pursuing enforcement of any of the terms of this Consent Decree by the Court.

## V.   CIVIL PENALTY

28. Within 30 days of the effective date of this Consent Decree, Defendant shall pay to the United States Treasury a civil penalty of $130,000 in full settlement of any and all violations of the CWA alleged by Plaintiff in this action that occurred on or before the filing of the Complaint through the date this Consent Decree is entered.

## VI.   ADDITIONAL PAYMENTS

29. Separate Environmental Project: Defendant shall pay an Additional Payment of $1,300,000 in settlement of the alleged violations that are the subject of this suit. Defendant shall use said payment to establish a trust fund at the Rose Foundation in accordance with instructions to be provided to Defendant by the Foundation within 30 days after the effective date of this Consent Decree. As a condition of receiving any funds pursuant to Paragraphs 22, 24, 25, and 29 of this Consent Decree, the Rose Foundation shall agree: (i) to certify that it is a 501(c)(3) tax-exempt entity; (ii) to disburse any money it receives under this Consent Decree solely to fund a project or projects in the harbor area as directed in writing by Defendant, subject to approval by Plaintiff, with the goal of promoting the restoration, preservation, protection, or other beneficial impacts on water quality in the Los Angeles Harbor and San Pedro Bay; (iv) not to use any money received under this Consent Decree for litigation or political lobbying activities; and (v) to submit to Plaintiff and Defendant on the first anniversary of receiving the payment described in this paragraph, and on each one-year anniversary thereafter, a report describing how the money was spent, and certifying that the funds were used in the manner described in this Consent Decree, until all money is expended. Disbursements may take the form of donations to other 501(c)(3) entities or payments made pursuant to contracts between the Rose Foundation and the service

providers that undertake the desired projects. The cost of administering the Fund and disbursements, including costs of the Trustee, shall be paid out of the Fund. The trust fund shall contain a provision that if, during any twelve consecutive months, there are no ongoing projects drawing from the Fund, and during those same twelve months Defendant fails to identify a project that meets Plaintiff's approval, at the end of those twelve idle months whatever balance remains in the Fund shall be transferred to the Rose Foundation's California Watershed Protection Fund to be used according to its guidelines and without restriction by Plaintiff or Defendant.

30. Payments made under Paragraphs 22, 24, 25, 28, 29, and 31 of this Consent Decree shall not be tax deductible by Defendant. Any public statement made by Defendant in any press release, in any oral or written material promoting Defendant's environmental or charitable practices or record, or in Defendant's Annual Reports, that makes reference to Defendant's payments to the Rose Foundation as described in Paragraphs 29 and 30 shall include the following language: "Payments to the Rose Foundation were made pursuant to the settlement of alleged violations of the Clean Water Act in an enforcement suit brought by Environment California."

## VII. COSTS OF LITIGATION

31. Consistent with 33 U.S.C. § 1365(d), within 30 days of the Court's entry of this Consent Decree, Defendant shall pay the amount of $315,000 in full and complete satisfaction of Defendant's obligation to reimburse Plaintiff's reasonable costs of litigation in this action (including reasonable attorney and expert witness fees) to Plaintiff's counsel by company check or wire transfer payable to the National Environmental Law Center; provided, that in any legal action by Plaintiff to enforce this Consent Decree in which Plaintiff ultimately prevails or substantially prevails, the Court, in issuing any final order, may award

//

costs of litigation for such prevailing claims (including reasonable attorney and expert witness fees) in the manner provided for in 33 U.S.C. § 1365(d).

## VIII.   ENFORCEMENT

32.   The Court shall retain jurisdiction of this Action until the termination of the Consent Decree to enforce the terms and conditions of the Consent Decree, to modify the Consent Decree, and to resolve disputes arising hereunder.  In the event either Party fails to comply with any provision of this Consent Decree, the other Party may seek to enforce this Consent Decree by motion in this case

## IX.  WAIVER, RELEASE, AND COVENANTS NOT TO SUE

33.   **Releases**: In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Plaintiff's allegations and claims as set forth in the 60-Day Notice Letter, the Supplemental Notice Letter, and Complaint for storm water pollution discharges at the Pump Station.

34.   **Waiver**: The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint and allegations and claims that could have

been brought under Section 505(a) of the Act, 33 U.S.C. § 1365(a) for storm water pollution discharges at the Facility, up to and including the Termination Date of this Consent Decree.

## X. GENERAL PROVISIONS

35. **No Admission of Liability**: Defendant enters into this Consent Decree for the purpose of avoiding prolonged and costly litigation and without admission of liability.

36. **Integration Clause**: This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations and warranties (express or implied) concerning the subject matter of this Consent Decree.

37. **Severability**: The provisions of this Consent Decree shall be severable, and should any provision hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

38. **Confidentiality**: Defendant shall not assert any claim of confidentiality for any documents or information provided to Plaintiff pursuant to this Consent Decree.

39. **Notices**: Notification to a Party shall be deemed submitted on the date it is postmarked. All correspondence concerning this Consent Decree and all documents that are submitted pursuant to this Consent Decree shall be addressed as follows:

As to Plaintiff:

Lewis DeHope
NATIONAL ENVIRONMENTAL LAW CENTER
294 Washington Street, Suite 720
Boston, MA 02108
E: ldehope@nelc.org
T: (617) 747-4317

//

As to Defendant:

Eugene D. Seroka  
Executive Director  
Port of Los Angeles  
425 S. Palos Verdes St.  
San Pedro, CA 90731  
E:    gene_seroka@portla.org

With copies to:

Steven Y. Otera, Esq.  
Office of the Los Angeles City Attorney, Harbor Division  
425 S. Palos Verdes St.  
San Pedro, CA 90731  
E:    sotera@portla.org  
T:    (310) 732-3750

40. **Modification of the Consent Decree**: No changes, additions, modifications (except those discussed in Paragraph 17), or amendments of this Consent Decree shall be effective unless they are set out in writing and agreed to by all Parties to the Consent Decree and approved by the Court.

41. Effective Date: The effective date of this Consent Decree shall be the date of its entry.

### XI.    FORCE MAJEURE/DELAY

42. "Force Majeure" for the purposes of this Consent Decree is defined as an event arising from causes beyond the control of Defendant or the control of any entity controlled by Defendant, including its consultants and contractors, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency (provided that Defendant, including its consultants and contractors, use best efforts and act in good faith in dealing with the governmental agency), which delays or prevents the

//

completion of any of the compliance measures by the dates set forth in Paragraphs 13–20. An increase in costs, changed financial circumstances, or Defendant's economic inability to comply are not Force Majeure events. Force Majeure does not apply to any other provision of this Consent Decree.

43. Any party seeking to rely on Force Majeure to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by the exercise of due diligence has been unable to overcome the failure of performance. The parties shall exercise due diligence to resolve and remove any Force Majeure event.

## XII.   TERMINATION, RESOLUTION OF CLAIMS, AND MISCELLANEOUS PROVISIONS

44. This Consent Decree shall expire once Defendant has completed the compliance measures set forth in Paragraphs 13–20, has demonstrated no Groundwater Discharges or Bacteria Effluent Violations for 12 consecutive months following the compliance dates imposed by Paragraphs 16 and 18, and has paid all penalties due under this Consent Decree.

45. This Consent Decree constitutes a settlement of all claims for civil penalties and injunctive relief pursuant to the CWA for the violations alleged in the Complaint.

46. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no effect.

47. The Parties shall file a notice with the Court certifying that the requirements of Paragraph 44 have been fulfilled and, as a result, the Consent Decree is terminated.

//

## XIII. CONSENT OF ENTRY OF CONSENT DECREE

48. Each of the Parties consents to the entry of this Consent Decree, subject to the Court's approval of this Consent Decree. The undersigned representatives of each Party affirms that they are fully authorized by the Party to enter into the terms and conditions of this Consent Decree and to execute and legally bind the represented Parties to it. This Consent Decree can be signed in counterparts.

Judgment is hereby entered in accordance with this Consent Decree and Order this 10th day of June 2025.

Consuelo B. Marshall
United States District Judge

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

AGREED AND CONSENTED TO:

FOR PLAINTIFF ENVIRONMENT CALIFORNIA, INC.:

_[signature]_    Date: 4/15/2025
Laura Deehan
State Director

APPROVED AS TO FORM AND LEGALITY:

NATIONAL ENVIRONMENTAL LAW CENTER

_[signature]_    Date: 4/15/2025
Lewis DeHope
Attorneys for ENVIRONMENT CALIFORNIA, INC.

FOR DEFENDANT CITY OF LOS ANGELES,
acting by and through its Board of Harbor Commissioners:

_[signature]_    Date: 4/14/25
Eugene D. Seroka
Executive Director

APPROVED AS TO FORM AND LEGALITY:

HYDEE FELDSTEIN SOTO, CITY ATTORNEY
Steven Y. Otera, General Counsel
Kenneth F. Mattfeld, Assistant
Janet L. Karkanen, Deputy

_[signature]_    Date: 4/14/25
Kenneth F. Mattfeld
Attorneys for THE CITY OF LOS ANGELES,
acting by and through its Board of Harbor Commissioners